Please call the next case. 523-0687-WC Dollar General Appellant by John Harp v. Illinois Workers' Compensation Comm'n Sherry Taylor Appellee by Jennifer Wagner Mr. Harp, you may proceed. May it please the court, counsel. My name is John Harp and I represent the matter. Our argument is simply that the petitioner failed to prove that her medical condition and the need for surgery was causally related to an accident that occurred on February 13, 2020. And that the finding of the Illinois Workers' Compensation Comm'n is against the manifest weight of the evidence as no causal connection opinion was provided by the petitioner, the appellee in this instance. And that the finding is contrary to the medical evidence that was presented at trial. It is undisputed that the appellee in this matter did have a fall at work and that she did injure her low back. However, the evidence would support that she had a contusion and that the condition had resolved itself prior to the finding of the fatty mass, the subcutaneous fatty mass, which she has claimed that she requires surgery for is causally related to this condition. Now, the matter did proceed to trial before arbitrator Lee. The arbitrator did not make a surgical recommendation or recommendation for us to and beyond the scope of the Illinois Workers' Compensation Commission and arbitrator. And the mistake continued to go through the process, including that it was adopted by the commission as well. While the appellee notes that a causation opinion is not necessary when there's undisputed facts in the case, the facts of this matter, her condition was disputed via the section 12 examination performed by Dr. Peter Merkin. Dr. Merkin found that she had... Counsel, let me just ask you a question. There's no question that this woman has a lymphoma. The question is, is the lymphoma causally connected to the fall at work? And I suppose the next question is, can a lymphoma ever be caused by a fall? It's a fatty tissue. It's a fatty tumor. It's excised when necessary. So now my, I suppose my question is, is there any evidence in the record where a medical opinion has been given that the lymphoma is causally connected to the fall, the falls, the work injury? I agree. I would agree with that statement, Your Honor. And no, there is no medical evidence that states that the lymphoma is causally related. In fact, the section 12 examiner did find that she was full duty, that she had no objective findings at the time of his evaluation in August of 2020, and that his, her subjective complaints at that point did not match her objective findings. Is there any evidence, is there any evidence that this lymphoma pre-existed the fall? There is no evidence that we were able to determine either it pre-existed or no. Answer that question. We have no evidence either way. So, so there can't be any aggravation of a pre-existing condition, right? It would have been a undiscovered pre-existing condition. And there's nothing going to that issue, right? That's correct. Is there, is the issue of a causal connection between a lymphoma and a fall a matter that's within the kin of the average layman? Uh, that I, I can't put an answer, Your Honor. I, I think it is. I mean, I think that the, the, the medical literature out there just doesn't make sense, um, that it could be caused by it. But, um, is there, is there literature indicating that a lymphoma can be caused by a fall? Not that I found. Um, and, and in this instance, the, the lymphoma is not, uh, epidural in nature. It's subcutaneous. It's in her skin. Um, so the symptoms she was having, you know, it wasn't impinging on a nerve. It wasn't in, it wasn't such as that. It was, it was something that was, it was, uh, just below her skin, uh, and, or it is just below her skin. And, um, and, and that, that way we wouldn't find it to be impinging on, you know, like a, like a, a herniated disc or anything such as that. But didn't Dr. Graves palpate it? And it was painful on palpation, was in the paraspinal area, slightly superior to the SI joint. Uh, that is where the location was. Um, and the similar tests, uh, happened at this section 12 examination that didn't, didn't provide similar results. Well, that was before the lymphoma was discovered, was it not? Correct. So the... Dr. Merkin didn't have the benefit of that soft tissue MRI. You, you didn't have her re-examined. He didn't do a records review after the, that information came to light, did you? That's correct. That's correct. He examined her in August, uh, and the lymphoma was discovered in December. Is that indicative of the fact that the lymphoma didn't exist when he examined her? It's quite possible. He, he didn't discover it on examination. And, and there were no prior, uh, scans that showed it prior to Graves' discovery, are there? Uh, no, the prior MRI did not, uh, did not show the lymphoma. Is the lymphoma picked up more probably in a CT scan than in an MRI? Uh, I don't know the answer to that. I would assume an MRI because it's soft tissue. But she had both tests done. Okay. And both were, both were negative prior to, prior to the August 2020 examination. Was there a description that Dr. Graves asked for a soft tissue MRI? Uh, he, I believe that he wanted a more intense MRI and in the lower area. After he palpated that mass. Yeah, more of a pelvic, uh, MRI as opposed to the lumbar spine. So, uh, with that said, we do ask that the, uh, court reverse the opinion of the, uh, reverse the findings of the, uh, Illinois Workers' Compensation Commission and find that the, uh, the petitioner's condition or the, uh, police condition was, uh, not, or need for surgery was not caused by the accident of February 13th, uh, 2020. So the only thing you're really asking for reversal of is for the respective medical. That's correct, your honor. Okay. In the form of surgery recommended by Graves. That's correct. Okay. Thank you. Any questions from the court? Oh, okay. Thank you, Mr. Harp. Good job. You'll have time in reply. Uh, counselor Wagner, you may respond. May it please the court. My name is Jennifer Wagner. I represent the appellate Sherry Taylor. Um, I did want to address the issue of, of the MRI. Um, the prior MRI scan that was done was focused on the lumbar spine, uh, Dr. Graves after palpating the mass. And I did want to clear this up. Um, he did order a soft tissue MRI, more of the pelvic area. That is when the lipoma was discovered. Um, she, she does not have any spinal pathology from, from this accident, but that was the original focus of the doctors. Um, and once that was determined, then later the lipoma was discovered. Um, and as, as the justice noted, uh, Dr. Merkin who performed the IME, um, actually noted that he reviewed no MRIs, not even the lumbar spine MRI. And then certainly not the later scans conducted by Dr. Graves or the records examined, uh, the petitioner. Um, and so therein lies the issue that the arbitrator found with the IME report is that, um, not only did he find some inconsistencies in Dr. Merkin's physical findings, as opposed to those found by Ms. Taylor's primary care, uh, providers who had consistently noted muscle spasms as had Dr. Graves, uh, but in addition, Dr. Merkin was not, uh, fully in possession of all the objective tests and records, um, that existed subsequent to his examination, which I believe was in June. Um, and this lipoma was discovered in December. Um, so again, he, he, he had no opinion to offer, um, as to the existence of the lipoma, any symptoms it could possibly produce, um, or its causal connection to the accident. So let me ask this question, assuming that the section 12 examiner didn't have any of What evidence is there in the record that this lymphoma, this fatty tissue was caused by the work-related fall? So what we have is that Ms. Taylor was specifically asked whether she had ever experienced a day without pain in this very specific area that she'd been complaining of since the field block in the area of the lipoma after he discovered it in order to determine whether it was the pain generator, um, because it was overlying the exact situs of her pain. I'm not suggesting the fact that a lymphoma in the proper area, once it grows, could not cause the pressure that you're talking about. But my question is, where did the lymphoma come from? How did it develop? And I suppose that the real question I'm getting at is, can a lymphoma ever be caused by a fall? It's a fatty tissue. It's an accumulation of fat in a certain position in the body, just under the skin. It behaves like a cyst. We, we do not have any evidence or testimony tending to establish that. What we do have are that her complaints were in that area, and that they were completely alleviated by the field block that Dr. Graves administered, which led to his surgical excision recommendation for that lymphoma. But how can that establish, um, the connection? I mean, could it not just be, just occur without? She testified previously to no back problems and to an immediate onset of back problems in that exact area at the time of the accident, which remained unrelieved until the field block was administered. So from the time of the accident until the field block, she had pain or sensation in this area? Yes. And what makes you think it was caused by the lymphoma? That, that was the only structure that was identified in the area of the, of the pain situs. And then the, I suppose you could, you could characterize it as a diagnostic field block. Um, when that relieved her pain, that indicated then to Dr. Graves that the lymphoma and the area around it was generating the pain that she'd been experiencing since the fall. Okay, but where's the testimony that the lymphoma, so the inference is, is that the pain from her fall has been isolated to be the lymphoma, is that correct? Yes. Emanating from the lymphoma. Okay. Yes. But where is the opinion that the lymphoma occurred because of the fall? We, we don't have that opinion. Do we have an opinion that the lymphoma existed before the fall? We do not know that. There's no records or testimony to indicate any sort of prior problems. There's no prior imaging. So we don't have anything to link an aggravation of an existing lymphoma, right? No, we do not. But the commission didn't have, and the arbitrator did not have here, any testimony or evidence that the lymphoma, uh, uh, that a lymphoma could not have caused her pain or been caused by the fall, correct? There's no testimony that says it couldn't have. True. And there's no testimony to suggest that it could have occurred by the fall either. True. So then, you know, so the commission, the arbitrator and the commission, they, they both inferred based on her testimony alone as to having no problem in that area until the fall and, uh, and then having relief from the injection that the lymphoma was causing her problem and had not been there prior to the fall. Is that correct? Yes. But, but, but here, ma'am, we're not talking about her not having pain because of her fall. She did. Even the section 12 examiner did. We're talking about the question of whether the lymphoma itself is causally connected because the only thing your opponent wants is he doesn't want to have to pay for the surgery on the lymphoma because there's no evidence in the record at all that it was caused by the fall. We know she had pain. She fell. She hurt herself. We know that even the section 12 examiner says she had a contusion. There isn't a question about, but where is the evidence in the record that would even support an inference that the lymphoma was caused by that fall? Or could be. Even if there was evidence in the record that said a lymphoma could be caused by a fall. There's no evidence in the record that the lymphoma itself was caused by the fall. There's no evidence that we know of that it preexisted the fall either or that it did not. The only evidence that we have is that Sherry Taylor did not have back problems prior. She had back problems in that exact area immediately upon the fall. And that the field block alleviated those problems. And that in the area of the field block is this physical structure of the lymphoma. That's what we have. And we feel that under the international harvester standard, that is sufficient circumstantial evidence that the commission was correct. The commission did slightly modify the decision of the arbitrator to state that her current condition of ill being was related to the accident. Whereas the arbitrator had been a little less than clear on that point. The commission did modify the decision to make that clear. What is her current condition of ill being? Current as of today or as of the time of the hearing? When the hearing took place. What was her current condition of ill being? She was still having pain and the surgery had been recommended and she wanted to pursue it at that time. But she had pain where? In the area of the lymphoma. And what did the MRI say? About the condition other than the lymphoma? It was read as a small area in subcutaneous fat. Thought to be a lipoma or fat necrosis. I'm sorry. Yeah. Absent that though, what did they say about her condition? The MRIs, anything else other than identifying the existence of a lymphoma? No, nothing of substance other than that was present. Okay, so nothing broken, nothing? No. There's no fractures, no disc extrusion, nothing like that. No traditional spinal injury, that's undisputed. So the MRI just shows the existence of a below the skin fatty tissue? Yes. So what it boils down to is that the commission was left with no testimony that the lymphoma could have been caused by the fall. No testimony that it could not have been caused by the fall. Testimony from the claimant that she did not have any problem with her back, nor was she aware of there being any kind of a lump or lymphoma prior to the fall. Correct. And then the only other additional information with regard to the lymphoma and why there was a recommendation by her doctor to have it removed was that the pain that she was experiencing at that time subsided or was eliminated after he did the injection to the lymphoma area, which suggested to him that that was the cause of her pain and it should be removed? Correct. And what is the standard that we have in this case with regard to the decision that the commission made with regard to finding a causal connection from the fall and the lymphoma or her pain issues? We feel that the international harvester standard is sufficient. She's demonstrated a chain of events of good health, an accident, the occurrence of which is undisputed, and the resulting disability. Under the prevailing standard, the court specified in that decision that a doctor's testimony on causal connection is not necessary. The circumstantial evidence, especially where the claimant's testimony matches the medical records, which the commission expressly found hers did, that a causal nexus can be established. What was the nature of the injury? Because we don't have any testimony. Not here in international. I'm sorry? In international. You were just quoting from international, weren't you? Yes. In that case, what was the nature of the injury? I'm sorry, I don't have that in front of me right now. Would that make a difference? It may. But I don't have it in front of me right now. Excuse me. You go ahead. I mean, could it be a common injury that everybody knows? Knows basically the ideology of it? Whereas here we don't? I don't know if we could say that it would have to be a commonly understood injury, especially because international harvester was decided in 1982, and clearly as medical science advances, we would have more understanding of causation of certain injuries than not. So what is our understanding today, and where is it in the record of lymphomas? We do not have anything in the record as to lymphomas. I would argue that the international harvester standard being applied only to injuries that are commonly understood would effectively negate the causation requirement that they state if an injury occurs that is difficult even for physicians to explain. It would upend the causation requirement that a doctor's testimony is not necessarily required to establish a causal connection because there are some injuries that occur, as I stated, that are difficult to elucidate or that physicians cannot fully explain. And so I would argue that it would have to be applied across the board and not just to injuries, the ideologies of which are commonly understood. What was the diagnosis when she went back to Litchfield family? It was right lower thoracic paraspinal muscle spasm and another one over the right SI joint. Lower back pain, let's see, tenderness over the right sacroiliac region was diagnosed with right with right-sided sciatica and it was recommended that there be an MRI. Now was there an MRI? She did eventually have a lumbar MRI, which was negative. Did she not that physical therapy worsened her back pain? She did tell them that, yes. She underwent an MRI in June of 2020 and that's where it revealed a tiny lymphoma with a film terminal as before, mild bilateral facet hypertrophy at each of the lumbar levels. There was some renal mass. And Graves recommends surgery when, in December of 2020? Yes. Graves noted that she had some spondylosis at L4, L5, L5, S1. Painful palpable mass over the right paraspinal region, slightly superior to S1. I see your time is up, but Justice Mullen, you had a question. Thank you. I'd forgotten it almost. How old was the claimant at the time of the injury? I could check for you very quickly. Oh, that's okay. I'm sure I can find it in the record. She was born in October of 1975. Thank you. Yes. Any other questions from the court? Oh, okay. Thank you, Counselor. Mr. Hart, you may reply. Our only reply is that with regard to the findings of Dr. Merkin's IME by the commission, it was not discounted because of the lack of the MRI, at least the first MRI. It was because he did not appreciate muscle spasms that were present at the prior clinic. However, neither did Dr. Graves. Neither orthopedic surgeon noted muscle spasms in their evaluations, and that was something that was based off the subjective complaints that were given to the primary care physician. How many times did Dr. Merkin evaluate or physically examine the claimant? One time. And when he issued his report, it was based on that one time evaluation, not on the report of the MRI or any records from Dr. Graves or anyone else? His examination is what he based his report on? No, he did have prior records, and I believe he did have the MRI, the lumbar MRI, but he did have the prior records from the Lynchville Clinic. And did he suggest that his report was based on any of that? I mean, he took the records into consideration, as any physician will in that instance. I think his physical findings on examination were the predominant factor. Did those records disclose the presence of this fatty tissue? No, they did not, because it wasn't, you know, it wasn't found as of yet. It wasn't found at that time? Right. Anything you wish to add, Mr. Harm? No, that will address some of the questions. Okay, further questions? No, no. Okay, thank you. Thank you, counselors, both, for your advice.